CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 13 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BRUCE DWAYNE BARNES, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:10-cv-544 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| WARDEN, POCAHONTAS STATE | ) | By: Hon. Glen E. Conrad |
| CORRECTIONAL CENTER, | ) | Chief United States District Judge |
| | ) | |
| Respondent. | ) | |

Bruce Dwayne Barnes filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent filed a motion to dismiss, to which Barnes responded, making the matter ripe for resolution. Upon review of the record, the court finds that the motion to dismiss must be granted.

**Factual and Procedural Background**

Barnes' petition stems out of a November 13, 2007 trial in the Circuit Court for Scott County, during which a jury convicted him of a misdemeanor charge and two felony controlled substance offenses. Barnes essentially argues that the admission into evidence of the certificate of analysis, which detailed the conclusions of the drug analysis performed by technicians at the Virginia Department of Forensic Science ("DFS"), violated his rights under the Sixth Amendment's Confrontation Clause.

The certificate of analysis featured significantly in Barnes' trial. Prior to trial, Barnes' counsel requested a copy of the certificate of analysis prepared by DFS, using a standard request form that cited Virginia Code § 19.2-187. See Commonwealth v. Barnes, No. CR07000317-00, Vol. 1 at 29. Barnes' counsel did not object to the procedure established by the relevant

statutory framework at that time or at any other time before the trial.

The certificate of analysis described the conclusions of the testing of the drugs that were seized from Barnes, all of which had been contained in a single prescription pill bottle. The certificate of analysis noted, with respect to three of the types of pills seized, that a "visual examination determined that the physical characteristics are consistent" with a controlled substance. (Docket No. 17-1 at 10.) Item 1D was "analyzed and found to contain Morphine," while Item IE was simply "found to contain Oxycodone." (Docket No. 17-1 at 10.)

At trial, the prosecution did not call any analyst or representative from DFS to testify regarding the analysis that they performed on the drugs seized from Barnes. Instead, the only witness called by the prosecution to testify about the certificate of analysis and its contents was Deputy David Woody, who was involved in the investigation and arrest of Barnes and had reviewed the certificate of analysis after receiving it from DFS after testing. As Woody began to testify about the drugs listed in the certificate, counsel for Barnes objected as follows:

> I have an objection to the certificate of analysis, and the, the pill bottle for that matter. He's not on trial for any of these other substances, he's on trial for two of them. Six round, green tablets, which I assume has been identified as a . . . morphine. And one round tablet identified as oxycodone. The other things are not in play, here.
> . . . And he's just not on trial for those. He nol[le] pros[s]ed those charges.
> . . . I just don't think it's relevant to have all these drugs . . . when he's not on trial for them.

(Tr. at 114-117.)

After the Commonwealth questioned the precise basis for counsel's objection, the Court stated, "I guess the issue is whether or not these items are relevant, and I believe the objection is, is that they are not relevant, or that if they are, that the prejudice outweighs the probative

2

value of them." (Tr. at 118.) The Court then ruled that Woody would be able to testify to at least some of the other drugs listed on the certificate of analysis:

> The Court: Well, I'm going to let him testify to 1b and 1c, and I take it that 1d is morphine. Now what is the Caris–
> Commonwealth: I have no idea what that is.
> Court: Carisprodol. It says that it's a Schedule 6 substance. . . . And what would be the objection to item 1a?
> Defense: Nothing's saying that we have other Schedule 6 drug [sic] in there. The packaging (inaudible) all there together. There's no connection to anybody. I don't know what that drug is, Your Honor, but nobody has ever mentioned it. I mean it could be, for all I know, it could be blood pressure medicine. I don't know.
> Commonwealth: Well, I mean, he could put evidence on that it is, is blood pressure medicine. That's perfectly valid. . . .
> The Court: All right. . . . [A]ny response to that?
> Defense: No, Your Honor, just my continued objections, that I don't think it's relevant to this case. However the Court wants to rule . . .
> The Court: Well, I'm gonna redact this item 1a. The Carisprodone. There's no [sic] been any testimony right now as to who the, of course, this has [not] been offered for admission yet.
> Defense: No. That's why I was —
> Commonwealth: Well, if we could just go ahead and get that over with, I'll just go ahead and offer it. I think that, and I, I think certainly that I, with the expert from the Drug Task Force here, I believe he could definitely testify that a lot of times, people keep those drugs together in the same pill bottle. That's just part of the, just part of the livelihood.
> Defense: Your Honor, the o–, and the other thing, Your Honor, as to the, as to the certificate of analysis, none of those things were analyzed. They took a look at 'em at the lab and said that, that's what it looks like.
> Commonwealth: They were all analyzed.
> Defense: No, they were not.
> Commonwealth: Read it.
> The Court: Well—
> Commonwealth: One dose unit analyzed, found to contain morphine, Schedule 2.
> Defense: Well, I understand that, that the two Schedule 2's were analyzed, but all these other pills weren't.
> The Court: 1d and 1e were analyzed.
> Defense: Yes.
> The Court: The others are a visual examination.
> Defense: Your Honor, I would object to it on that basis also.

3

> The Court: Well, I would overrule the objection as to the visual examination, not having been actually analyzed. I believe the visual examination is appropriate. However, it is subject to cross examination, that go [sic] to the weight of the evidence. . . .

(Tr. 119-122.)

The Court then ruled that Woody could testify as to the color of the pills that he found, but could not testify as to their substance until the certificate of analysis came into evidence, at which time the Court indicated that "there may be another objection." (Tr. at 125.) After several more questions of Woody, the Commonwealth then moved to enter the certificate of analysis into evidence. When the Court asked counsel for Barnes if there was "any objection" to the admission of the certificate of analysis, Barnes' counsel responded, "Yes, Your Honor. I think I've already stated for the record what my objection was." (Tr. at 129.) After redacting portions of the certificate of analysis, it was admitted into evidence. (Tr. at 129-31.) Woody then testified regarding the contents of the certificate of analysis that he had received from DFS. (Tr. at 132-35.)

At the conclusion of the evidence, Barnes was convicted of one count of contributing to the delinquency of a minor and of two counts of possession of a controlled substance. He was subsequently sentenced to twelve months' incarceration on the first charge and to ten years' incarceration for each of the controlled substances charges, with the sentences to run consecutively.

On May 11, 2009, Barnes appealed his convictions to the Virginia Court of Appeals, claiming two points of error: (1) that he had suffered a deprivation of the Fourth Amendment in light of <u>Arizona v. Gant</u>, 129 S. Ct. 1710 (2009), which had been decided after his trial; and (2)

that the evidence was insufficient to support his convictions. On September 9, the Court denied Barnes' petition for appeal by per curiam order, observing that Barnes had not objected at trial to the allegedly-unconstitutional search and had therefore not preserved the question for the Court's review.

In the meantime, on June 25, 2009, the United States Supreme Court handed down its decision in Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009) (explaining that a criminal defendant's rights under the Confrontation Clause extend to preparers of certificates of forensic analysis). On November 17, 2009, Barnes, acting on his own behalf rather than through his counsel, sent a supplemental brief to the Virginia Court of Appeals, asking them to apply Melendez-Diaz to the facts of his case. The Court instructed him that filings could be made only by his counsel and, on November 19, denied Barnes' petition for consideration by a three-judge panel.

Barnes, through counsel, then appealed to the Supreme Court of Virginia, asserting a Fourth Amendment claim under Gant and a Confrontation Clause claim under Melendez-Diaz, and requesting that the Court consider both of the claims despite the fact that he had not raised them at trial (or, with respect to the latter claim, in the Court of Appeals) based on the fact that the law had changed between his trial and his appeal. The Court denied his petition for appeal "[u]pon review of the record in this case and consideration of the argument submitted in support of and in opposition to the granting of an appeal." Barnes v. Commonwealth, No. 092535 (Va. May 19, 2010).

After his petition for rehearing—in which Barnes observed that Virginia's statutory scheme governing the admission at trial of certificates of analysis had just been invalidated

under Briscoe v. Virginia,130 S. Ct. 1316 (Jan. 25, 2010)—was denied, Barnes filed the present action in this court. He brings only a single claim; namely, that his Sixth Amendment right to confrontation was violated by the admission of the certificate of analysis at his trial.

## Discussion

Because the petitioner is proceeding pro se, his pleadings must be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). The requirement of liberal construction does not mean, however, that the court can ignore a clear failure in the pleading to "allege anything that remotely suggests a factual basis for the claim." Weller v. Department of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990). Moreover, "judges are not . . . required to construct a [pro se] party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417-18 (7th Cir. 1993). Likewise, the court is not required to "attempt[] to divine the point" the litigant seeks to make about the specific facet of the criminal proceedings that he challenges. Id. Where the petitioner's motion, when viewed against the record, does not state a claim for relief, it should be dismissed. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### I. The Crawford Progeny

Barnes situates his claim as arising from the ruling announced by the Supreme Court in Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009). There, the Court clarified the scope of its precedent-shattering opinion in Crawford v. Washington, 541 U.S. 36 (2004), which held that, under the Sixth Amendment's Confrontation Clause, a witness's testimony against a criminal defendant is "inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." Melendez-Diaz, 129

S. Ct. at 2531 (citing Crawford, 541 U.S. at 54). In so doing, Crawford rejected the previously-controlling scheme articulated in Ohio v. Roberts, 448 U.S. 56 (1980), which had ruled that the Confrontation Clause did not bar admission of an unavailable witness's statement against a criminal defendant as long as the statement bears "adequate 'indicia of reliability,'" such as falling within a "firmly rooted hearsay exception" or exhibiting "particularized guarantees of trustworthiness." Id. at 66. Crawford, in displacing Roberts, expressly tied a criminal defendant's confrontation rights to the opportunity to cross-examine any witness offering "testimonial statements" against him. See Davis v. Washington, 547 U.S. 813, 821 (2006). The admission of non-testimonial hearsay does not implicate the Confrontation Clause under Crawford, however, and its admission at trial may therefore be governed merely by hearsay law rather than by the rigors of the Confrontation Clause. Crawford, 541 U.S. at 68.

Because Crawford declined to comprehensively define which types of evidence should be deemed "testimonial," a significant amount of confusion over this question immediately erupted. Davis, 547 U.S. at 823. One area of immediate contention involved the use in drug prosecutions of affidavits produced by lab analysts which detailed the results of the analysis conducted of the substances seized from the defendant: Are they testimonial and therefore subject to all the rigors of the Confrontation Clause? Or are they non-testimonial and therefore admissible whenever a hearsay exception applies? In Melendez-Diaz, the Court resolved the issue: "[U]nder our decision in Crawford the analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be confronted with the analysts at trial."

Melendez-Diaz, 129 S. Ct. at 2532.

Mirroring the Crawford shockwave felt in every jurisdiction in America, see Melendez-Diaz, 129 S. Ct. at 2543, 2549-50, 2554-55 (Kennedy, J., dissenting), the state of Virginia law, under which Barnes was prosecuted, was disrupted by the Court's evolving Confrontation Clause jurisprudence. At the time of Barnes' trial, Virginia Code § 19.2-187 provided that certificates of analysis were admissible at trial to prove the truth of the facts they contained as long as they were attested to by the analyst who performed the examination. A companion statute, former § 19.2-187.1,[1] established a procedure that allowed a defendant

> to call the person performing such analysis or examination or involved in the chain of custody as a witness therein, and examine him in the same manner as if he had been called as an adverse witness. Such witness shall be summoned and appear at the cost of the Commonwealth.

Id. When, after Crawford, several defendants argued in the Supreme Court of Virginia that the admission—over their objections—of the certificates of analysis in their cases violated their confrontation rights, the Court held that they had waived their confrontation rights by failing to use the procedures outlined in former § 19.2-187.1. Magruder v. Commonwealth, 657 S.E.2d 113, 124 (Va. 2008).

The Magruder decision was then appealed to the United States Supreme Court, where the defendants argued that the procedure outlined in former § 19.2-187.1 was insufficient to protect their confrontation rights and that it was therefore unconstitutional. In the interim, the Court handed down its decision in Melendez-Diaz. After hearing oral argument on the appeal of Magruder (now styled Briscoe v. Virginia), the Court issued an opinion that was lengthy in

---

[1] Apparently anticipating an unfavorable ruling in Briscoe, the Virginia General Assembly entirely rewrote § 19.2-187.1 in a special session held in the summer of 2009. See 2009 Va. Acts, Sp. S. I, c. 1 (eff. Aug. 21, 2009).

8

nothing but concision: "We vacate the judgment of the Supreme Court of Virginia and remand the case for further proceedings not inconsistent with the opinion in [Melendez-Diaz]." Briscoe v. Virginia, 130 S. Ct. 1316 (Jan. 25, 2010) (per curiam).

On remand, the Supreme Court of Virginia held that, under Melendez-Diaz, § 19.2-187.1 violated the Confrontation Clause because it "impermissibly relieves the prosecution of its burden to present its witnesses against a defendant and imposes a burden on the defendant to bring into court and call those adverse witnesses." Cypress v. Commonwealth, 699 S.E.2d 206, 212 (Va. 2010). Cf. Melendez-Diaz, 129 S. Ct. at 2540 ("[T]he Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court. Its value to the defendant is not replaced by a system in which the prosecution presents its evidence via ex parte affidavits and waits for the defendant to subpoena the affiants if he chooses.").

## II. **Procedural Default**

The Commonwealth does not dispute that, in the abstract, the rules announced in Melendez-Diaz and Briscoe apply to Barnes' conviction, given that his case was pending on direct review when those decisions were handed down. See Griffith v. Kentucky, 479 U.S. 314, 328. But see Butler v. Curry, 528 F.3d 624, 633 (9th Cir. 2008) ("When a general rule must be applied in a new situation, it can hardly be thought to have created a new principle of constitutional law."); Scott v. Mule Creek State Prison, 2010 WL 5563805, at *4 (C.D. Cal. Dec. 28, 2010) (unpublished) ("[T]he holding in Melendez-Diaz is better characterized as an application of the Crawford rule of constitutional criminal procedure rather the creation of an entirely new rule."). Cf. Whorton v. Bockting, 549 U.S. 406, 421 (2007) (Crawford does not apply retroactively to cases on collateral review).

9

Nevertheless, the merits of Barnes' claims cannot be reached in this petition because of his failure to properly present them before the state courts. Because federal habeas courts must respect "the States' interest in correcting their own mistakes," Coleman v. Thompson, 501 U.S. 722, 732 (1991), it has long been settled that, "[w]hen a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991). See also Barnes v. Thompson, 58 F.3d 971, 974 n. 2 (4th Cir. 1995) ("A basic tenet of federal habeas review is that a federal court does not have license to question a state court's finding of procedural default, if based upon an adequate and independent state ground.") (citing Harris v. Reed, 489 U.S. 255, 262 (1989)). Whether a particular state procedural rule is an independent and adequate ground for decision is a question of federal—not state—law. Johnson v. Mississippi, 486 U.S. 578, 587 (1988).

Here, Barnes conceded before the Supreme Court of Virginia that he had failed to raise his confrontation claim in the Virginia Court of Appeals. Barnes v. Commonwealth, No. 092535, Pet. at 4, 17. The Court denied his petition "[u]pon review of the record in this case and consideration of the argument submitted in support of and in opposition to the granting of an appeal." Barnes v. Commonwealth, No. 092535 (Va. May 19, 2010). Because the main argument that the Commonwealth had made in its brief regarding the confrontation claim was that it was barred under the contemporaneous objection rule of Virginia Supreme Court Rule 5:25, it is clear that the Court's denial of Barnes' petition rested on an application of Rule 5:25. See id., Com. Reply at 24; Com. Reply to Pet. for Rehearing at 2. See also Evans v. Thompson, 881 F.2d 117, 123 n. 2 (4th Cir. 1989) (noting its belief that the state habeas court had held that the petitioner's claim was procedurally barred when it dismissed the claim "for the reasons stated in the [Commonwealth's] answer.").

The United States Court of Appeals for the Fourth Circuit has held that Rule 5:25 is an independent and adequate state procedural bar that precludes habeas review of errors that a petitioner has not raised at trial. Weeks v. Angelone, 176 F.3d 249, 270 (4th Cir. 1999). And, indeed, it appears that appellate courts in Virginia have with some regularity refused to hear post-Melendez-Diaz Confrontation Clause claims that were not presented at trial. In Mitchem v. Commonwealth, 2010 WL 87164, at *3 (Va. App. Jan. 12, 2010) (unpublished), for example, the Court observed,

> Appellant asserted at trial that the DMV transcript was hearsay, not that it violated his rights under the Confrontation Clause. The trial court was not given any indication that appellant sought to cross-examine the DMV Commissioner regarding the accuracy of the transcript. In fact, appellant's argument at trial was that the Commonwealth did not lay a proper foundation for admission of the transcript as a business record and that 'generally speaking, it's not good enough.' . . . Appellant's objection, by its very wording, is a 'general' objection and thus does not come close to the specificity required to preserve an issue for appeal. Accordingly, we need not decide whether Melendez-Diaz applies to the facts of this case because appellant did not properly preserve the issue for appeal.

Id. at *3. See also Miller v. Commonwealth, 2009 WL 2997079, at *3 (Va. App. 2009) (unpublished) ("[A]ppellant did not contend in the trial court, as he now argues on appeal, that Virginia's statutory scheme impermissibly shifted to him the burden of calling the analyst. Thus, appellant failed to satisfy the contemporaneous objection requirement . . . ) (citations omitted); Jimenez v. Commonwealth, 402 S.E.2d 678, 680 (Va. 1991) (Rule 5A:18, which governs the ability of the Court of Appeals of Virginia to review error, is "virtually identical" to Rule 5:25); Perez v. Commonwealth, 580 S.E.2d 507, 513 n. 8 (Va. App. 2003) (Agee, J., concurring) ("For present purposes, I assume Rules 5:25 and 5A:18 are interchangeable and what is said in application to one applies to the other.").

By contrast, Virginia appellate courts have not hesitated to wade into the merits of

11

Confrontation Clause claims where the defendant had properly preserved the question for review. In Grant v. Commonwealth, 682 S.E.2d 84 (Va. Ct. App. 2009), for instance, the Court reversed on Confrontation Clause grounds even where Melendez-Diaz had been decided during the pendency of the defendant's appeal because the defendant had notified the prosecution at trial that

> he does not stipulate to the admissibility of the contents of any properly filed certificates of analysis in this case. Mr. Grant further notifies the Commonwealth that he desires that the preparer of the certificate, including persons having personal knowledge of information attested to in the certificate, be summoned by the Commonwealth to appear at trial . . . at the cost of the Commonwealth to be cross-examined in this matter.

Id. at 86. See also Magruder, 657 S.E.2d at 116; Cypress v. Commonwealth, 699 S.E.2d 206, 208 (Va. 2010) ("Cypress and Briscoe each argued at trial and on appeal that the introduction of a certificate of analysis without any testimony from the forensic analyst who performed the testing and reported the results of the analysis violated his rights guaranteed by the Confrontation Clause."); Darnell v. Commonwealth, 408 S.E.2d 540, 542 (Va. App. 1991) ("[I]n this case we find that the objection was made with sufficient certainty so that the trial judge could understand the precise question he was called upon to decide."). Cf. Farmer v. Commonwealth, 687 S.E.2d 105 (Va. App. 2010) (holding that appellant had waived his confrontation rights by failing to use § 19.2-187.1), vacated on rehearing en banc, 702 S.E.2d 602 (Va. App. Dec 28, 2010) (holding that Briscoe, via Cypress, had invalidated the statute and that defendant's failure to use it therefore did not constitute a waiver of his confrontation rights).

Of course, this court cannot second-guess the state court's application of its own procedural rules to Barnes' case absent a claim that the application or interpretation itself implicates a federal right. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68

(1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010) ("It is beyond the mandate of federal habeas courts . . . to correct the interpretation by state courts of a state's own laws."); Warren v. Baskerville, 233 F.3d 204, 207 (4th Cir. 2000). Compare Reich v. Collins, 513 U.S. 106, 110-11 (1994) (due process does not permit a state to reinterpret its statutory scheme without notice), Bouie v. City of Columbia, 378 U.S. 347, 354 (1964) ("[A]n unforeseeable and unsupported state-court decision on a question of state procedure does not constitute an adequate ground to preclude this Court's review of a federal question.'), and Wright v. Georgia, 373 U.S. 284, 291 (1963) ("Novelty in procedural requirements cannot be permitted to thwart review in this Court . . .") (quoting N.A.A.C.P. v. Alabama, 357 U.S. 449, 457 (1958)), with Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Accordingly, because Rule 5:25 is an independent and adequate state ground for decision, and because the Supreme Court of Virginia relied upon Rule 5:25 in its disposition of Barnes' case, his claim is procedurally defaulted and barred from this court's review. Cf. Flores v. Hickman, 533 F. Supp. 2d 1068, 1082-86 (C.D. Cal. 2008) (finding Confrontation Clause claim procedurally defaulted despite general objection to evidence on hearsay grounds); McIntyre v. McKune, 2011 WL 686120, at *28 (D. Kan. Feb. 18, 2011) (unpublished) ("Even if petitioner had successfully addressed retroactivity and applicability questions, the fact remains that he did not present any such argument to the Kansas Supreme Court. It follows that this significantly different claim was not exhausted in state court, and has been procedurally defaulted."); Flournoy v. Small, 2010 WL 5021196, at *4 (S.D. Cal. Dec. 3, 2010)

13

(unpublished) ("Because Flournoy's trial counsel failed to object to admission of Rogala's testimony on Confrontation Clause grounds, an adequate and independent ground bars this Court from reviewing the constitutional claim."); Ortega v. Evans, 2009 WL 960751, at *7 (C.D. Cal. April 8, 2009) (unpublished) (same).

### III. Cause and Prejudice

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (citing Murray v. Carrier, 477 U.S. 478, 485, 496 (1986)); United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). Barnes has made no attempt to demonstrate that he is actually innocent of the underlying offense. See Carrier, 477 U.S. at 495-96.

The cause and prejudice standard, for its part, requires Barnes to show not only that "some objective factor external to the defense" impeded his efforts to raise the issue on direct review, Coleman, 501 U.S. at 753, but also that the error he alleges "worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Significantly, a habeas petitioner cannot establish cause for his failure to raise an issue on direct appeal if the reason for his failure was that it would have been futile for him to do so under then-existing precedent: "[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Bousley, 523 U.S. at 623 (quotations omitted). Nor does a subsequent court decision demonstrate cause for a petitioner's default unless the procedurally defaulted claim "is so novel that its legal basis was not reasonably available to counsel." Reed v. Ross, 468 U.S. 1, 16 (1984); Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998).

14

Notwithstanding the potentially seismic implications of Melendez-Diaz, the court cannot conclude that the legal basis for Barnes' current claim was not reasonably available to him at trial. Crawford, of course, had been decided back in 2004, and the Melendez-Diaz decision itself noted that it "involves little more than the application of our holding in Crawford." Melendez-Diaz, 129 S. Ct. at 2542. And, while Melendez-Diaz overturned several state court decisions that had determined that various lab reports were not testimonial under Crawford, fully ten States had applied Crawford in accordance with Melendez-Diaz before the latter had been decided. Id. at 2540 n. 11. Finally, Melendez-Diaz itself was filed in the United States Supreme Court on October 26, 2007 and was briefed extensively thereafter, while Magruder was before the Virginia Supreme Court in September of 2007. Barnes was not tried until November of 2007. Given the extensive forecast that the prosecution's conduct with respect to certificates of analysis was constitutionally infirm under Crawford and the fact that this issue was being actively litigated in highly-visible arenas at both the state and federal level before Barnes' trial even got under way, the court cannot conclude that any such argument was "not reasonably available" to counsel at the time of Barnes' trial. Reed, 468 U.S. at 16.[2] As a consequence, Barnes' failure to raise at trial or on direct appeal the claim he currently urges cannot be excused. Bousley, 523 U.S. at 623. His petition must therefore be dismissed.

## Conclusion

For these reasons, the respondent's motion to dismiss will be granted.

The petitioner is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the circuit court of appeals or of this

---

[2] Barnes does not claim that his counsel was unconstitutionally ineffective such that it would establish cause for his default under Coleman v. Thompson, 501 U.S. 722, 753-54 (1991). The court accordingly does not reach that issue.

15

court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Id. Therefore, this court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the petitioner and to counsel of record for the respondent.

ENTER: This 13th day of April, 2011.

_____
Chief United States District Judge